UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SHANE DOUGLAS BELL., <br><br> Plaintiff, <br><br> vs. <br><br> DARREN YOUNG, in his individual and official capacity, TROY PONTO, in his individual and official capacity, JENNIFER DREISKE, in her individual and official capacity, STEVEN SWYGERT, in his individual and official capacity, HAYLEY BUOL, in her individual and official capacity, JORDAN MOOS, in his individual and official capacity, UNIT MANAGER EKEREN, in their individual and official capacity, UNIT COODRINATOR ZOSS, in their individual and official capacity, CORRECTIONAL OFFICER NEILSON, in their individual and official capacity, BRANDON BALSAVAGE, DESTINY MARANOWSKI, CORRECTIONAL OFFICER LONEMAN, MIKE LEIDHOLT, in his individual and official capacity, LINDA MILLER -HUNHOFF, in her individual and official capacity, JULIE DENNING, in her individual and official capacity, TAMMY MERTENS-JONES, in her individual and official capacity, ALEXANDRIA ALSDORF, in her individual and official capacity, J. WESTERKIRCHER, in their individual and official capacity, JESSICA COOK, in his individual and official capacity, TERRI, Summit Manager, in their individual and official capacity, <br><br> Defendants. | 4:21-CV-04134-LLP <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Shane Douglas Bell, an inmate at the South Dakota State Penitentiary (SDSP), filed a pro se lawsuit under 42 U.S.C. § 1983 alleging violations of the First, Eighth, and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act

1

(RLUIPA), 42 U.S.C. § 2000cc. Doc. 1. He provided his prisoner trust account and filed a motion to proceed in forma pauperis. Docs. 2 and 7. This order shall address Bell's motion to proceed in forma pauperis as well as an initial screening of his complaint.

## MOTION TO PROCEED IN FORMA PAUPERIS

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "'[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan.'" *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Bell filed a motion to proceed in forma pauperis. Doc. 7. His prisoner trust account report shows his average monthly deposits to be $166.67 and his average monthly balance as $20.22. *Id.* at 1. Because Bell would owe more than his average monthly balance as his initial partial filing fee, the Court grants Bell leave to proceed in forma pauperis and waives his initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Bell must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The

2

statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure.

The clerk of the Court will send a copy of this order to the appropriate financial official at plaintiff's institution. Bell will remain responsible for the entire filing fee, as long as he is a prisoner, even if the case is dismissed at some later time. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

## FACTUAL BACKGROUND

On April 4, 2016, Bell brought a § 1983 complaint against several SDSP officials for a prison policy that only allowed purchased books to be received by prisoners, rather than donated books that otherwise complied with prison rules. 4:16-CV-04046 Doc. 1.[1] That complaint was dismissed on February 5, 2019, after Bell and the defendants reached a settlement in which the defendants agreed to, among other things, revise the donated books policy and refrain from retaliation or any unlawful adverse effects stemming from the lawsuit. 4:16-CV-04046 Docs. 140, 141. Following the lawsuit, Bell alleged that prison officials violated this settlement by discussing within his hearing plans to move him to a different location for disciplinary reasons and by calling him names such as "rat," "snitch," "Buddha rat," and "lawyer rat." 4:16-CV-04046 Doc. 149 at 8. Rather than deny these allegations, the prison officials argued that name calling and discussion of plans of relocation did not constitute retaliation. *Id.* But the Court found

---

[1] This Court dismissed this order in part and directed service on the defendants. *Bell v. Young*, 4:16-CV-04046-LLP, 2016 WL 3064077 (D.S.D. May 27, 2016). This order will refer to the docket from that case as 4:16-CV-04046 Doc.

3

that the settlement protected Bell from any "unlawful adverse effect," covering conduct beyond the narrow definition of retaliation argued for by prison officials, and required all prison employees who had contact with Bell to reprint and sign the relevant paragraph of the settlement agreement in an order issued on October 31, 2019. *Id.* at 8-9.

Since that order, Bell alleges that the name calling and other retaliatory conduct have not ceased and that they constitute violations of his First Amendment free speech rights. *Id.* at 23. He alleges that he is being retaliated against both for the previous lawsuit and for his use of the prison grievance system. *Id.* at 28. He also alleges that prison staff monitor his communications with friends and family on prison tablets and retaliate against him based on those communications. *Id.* at 14, 36. He claims specifically that Young, Ponto, Swygert, Buol, Moos, Neilson, Balsavage, Maranowski, Loneman, Denning, Alsdorf, and Westerkircher engaged in name calling and other retaliatory conduct and that Young, Ponto, Buol, Moos, Ekeren, Zoss, Leidholt, and Cook were responsible for failing to prevent name calling and failing to prevent other retaliatory conduct. *Id.* at 11-13, 15-16, 20, 22, 33-39, 42, 44-45.

Bell also brings a retaliation claim against Terri, the manager for Summit, the third-party food service company used by the prison. *Id.* at 46. Bell alleges that he filed an informal resolution to get reimbursed for money spent on donuts that were expired and moldy. *Id.* at 46. He claims that he was fired from his job at the commissary in retaliation for filing the informal resolution. *Id.* According to Bell, Terri told him directly that he was fired for this reason. *Id.* Bell brings this claim against Terri and Dreiske, who he alleges allowed him to be fired in retaliation for his grievance. *Id.* at 20, 46.

Bell also alleges several violations of his First Amendment free speech and free exercise rights and the RLUIPA based on prison staff's denial of literature and religious harassment. *Id.* at

13-14, 37. He claims that he was restricted access to three issues of a Buddhist publication titled "Lion's Roar," which he wanted to use to learn, practice, and teach his Buddhist beliefs in the prison. *Id.* at 13. The publication was deemed sexually explicit, and he was only allowed to view it in the viewing room. *Id.* at 14, 16. Further, he argues that religious harassment by prison staff violates his rights under the First Amendment. *Id.* at 37. He brings these claims against Young, Ponto, Dreiske, Balsavage, Leidholt, Miller-Hunhoff, and Mertens-Jones. *Id.* at 13-14, 16-17, 37-38, 40, 43.

Bell claims that his First Amendment free speech rights were violated when prison staff denied non-religious literature as well. *Id.* at 13, 39-40. He alleges that he was denied a prison litigation self-help book because of a mail policy that he believes was not equally enforced. *Id.* Further, he was denied access to a World War II Military History magazine. *Id.* at 13, 40. He brings these claims against Young, Leidholt, and Miller-Hunhoff. *Id.* at 13, 39-40.

He also brings a First Amendment access to the courts claim based on the dysfunction of the prison tablets and prison staff's seizure of his legal notes. *Id.* at 14, 42. He alleges that the tablets' frequent failure prevents him from doing legal research on the LexisNexis app. *Id.* at 14. Further, he alleges that the caselaw on the LexisNexis app is limited to what the prison administration puts there, preventing him from accessing many cases. *Id.* He also argues that the tablets are monitored, so his legal research and legal strategies are not confidential and are viewed by the opposing parties. *Id.* He claims that prison staff often discuss his legal research to intimidate him. *Id.* He also claims that prison staff search his cell and seize and destroy legal notes. *Id.* at 42. He brings this claim against Young, Ponto, Dreiske, Swygert, and Denning. *Id.* at 14-16, 19-21, 41-42.

Bell brings a First Amendment claim for failure to investigate the above claims, arguing that prison supervisory staff's failure to properly investigate his prison grievances constitutes a violation of his First Amendment rights. *Id.* at 18, 33-35. He brings this claim against Dreiske, Moos, Ekeren, and Zoss. *Id.*

Bell also alleges violations of Fourteenth Amendment equal protection rights. *Id.* at 23. He argues that refusal to allow delivery of his Buddhist materials interferes with his ability to practice his religion and violates his equal protection rights because prison staff allow other religious materials and practice. *Id.* at 14. Also, he argues that the prison policy of refusing to deliver mail with return address stickers is unfair and selectively enforced in violation of his equal protection rights. *Id.* at 40. He brings these claims against Young, Ponto, and Miller-Hunhoff. *Id.* at 14, 16, 40.

Bell claims that his Fourteenth Amendment right to due process was violated when prison staff took and destroyed his legal notes. *Id.* at 21. He alleges that Swygert took his legal notes that described statements made by Loneman and another prison officer and that Denning took his legal journal and showed the contents to inmates and prison staff. *Id.* at 21, 41. He brings this claim against Swygert and Denning. *Id.*

Last, Bell claims that much of the alleged behavior constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 23. Specifically, he argues that the religious restrictions and retaliatory conduct are in violation of his Eighth Amendment rights. *Id.* He brings this claim against Young, Ponto, Dreiske, Swygert, Buol, Moos, Ekeren, Zoss, Neilson, Balsavage, Maranowski, Loneman, Leidholt, Denning, Mertens-Jones, Alsdorf, Westerkircher, Cook, and Terri. *Id.* at 12, 15-16, 18-22, 33-39, 41-46.

Bell seeks several forms of injunctive relief. *See id.* at 23-26. He seeks to be rehired at the commissary, to have an independent monitor appointed to enforce court orders and the law, to have defendants fired, and to have defendants be required to follow the law. *Id.* at 23. He wants prison policy changed to allow his Buddhist publications. *Id.* He wants the prison to refrain from retaliation and illegal adverse effects, and he wants to be placed in a single cell for the rest of his sentence. *Id.* He also wants his prison litigation self-help book replaced. *Id.*

Bell seeks to have the prison use another service provider for tablets and to be able to access all caselaw on the LexisNexis app. *Id.* at 24. He also wants to access media that he pays for on the tablets without any problems. *Id.* He wants to be able to be present at his cell door whenever his cell is searched and wants prison staff to refrain from taking his legal work, documents, research, and books. *Id.* He wants prison staff who call him a rat or any similar name to be investigated and fired and for every prison employee he interacts with to review the retaliation paragraph of his previous settlement agreement and sign it. *Id.* at 24-25. He seeks a public apology. *Id.* at 24. Bell also seeks changes to the administrative remedy process, asking for every filed remedy to be processed and investigated. *Id.* at 25. Bell specifically requests he not be moved out of state as retaliation. *Id.*

Bell also seeks monetary damages, including punitive damages of $10,000 or whatever the Court finds appropriate, as well as $500 from Summit and an additional $500 in punitive damages for firing him, although Bell only names Terri, not Summit, as a defendant. *Id.* at 24, 26. He sues all defendants in their individual and official capacities, except for Balsavage, Maranowski, and Loneman, whose capacities he does not specify. *Id.* at 2-9. Construing his complaint liberally, this Court finds that he named those defendants in their individual and official capacities as well. *Id.* at 5.

## LEGAL STANDARD

The Court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Bell alleges violations of the United States Constitution as well as the RLUIPA. The Court will now assess each individual claim under 28 U.S.C. § 1915A.

## DISCUSSION

### I. Official Capacity Claims

Bell has sued all defendants in their individual and official capacities. Doc. 1 at 2-9. Except for Terri, all defendants were employees of the South Dakota Department of Corrections at the time of the incidents in question. *Id.* As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. *See Pearson v. Callahan*, 555 U.S. 223, 242-243 (2009). A private employee may be considered a state actor when contracted by the state to perform a service. *See West v. Atkins*, 487 U.S. 42, 56 n.14 (1988) (noting that if private employees were not state actors contracted hired by a state prison, "the state [would] be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied" (citation omitted)).

Here, Bell seeks both money damages and injunctive relief. *Id.* at 23-26. Claims against defendants in their official capacities are the equivalent of claims for money damages against the

state of South Dakota. Under *West*, Terri, although not a state employee, was a state actor. The state of South Dakota has not waived its sovereign immunity to allow Bell's official capacity claims for money damages. Thus, the defendants are protected against official capacity claims for money damages.

## II. Retaliation Claims

Bell alleges that prison staff have retaliated against him for his previous lawsuit and for using the prison grievance system. Doc. 1 at 23. He also alleges that he has been retaliated against for the contents of his texts and letters to his family. *Id.* at 14, 36. Last, he alleges that Terri, the Summit Foods manager, retaliated against him for filing a prison grievance. *Id.* at 46. "The right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in [the Eighth Circuit] for more than twenty years." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). In order for Bell to allege a First Amendment retaliation claim, he must show that "'(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Thus, taking Bell's allegations as true, the allegations clearly satisfy the first prong of a First Amendment retaliation claim because "[t]he filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

For Bell to satisfy the second prong of a First Amendment retaliation claim, he must demonstrate not only that defendants took an adverse action toward him but also that defendants'

alleged adverse action "'would chill a person of ordinary firmness from continuing in the activity[.]'" *Spencer*, 738 F.3d at 911 (quoting *Revels*, 382 F.3d at 876); *see also Lewis*, 486 F.3d at 1029 (holding in a First Amendment retaliation claim that the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process). "'The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment.'" *Santiago*, 707 F.3d at 992 (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003)). This is an objective test that looks at whether a reasonable prisoner's actions would be chilled by an official's alleged adverse actions. *See id.* (citing *Garcia*, 348 F.3d at 729).

Here, Bell has alleged sufficient facts to show that a reasonable prisoner of ordinary firmness would have been "chilled" from using the grievance procedure, from asserting an inmate lawsuit, and from using the monitored prison correspondence system to send texts and letters to family and friends if that prisoner were in Bell's position. Bell articulates specific alleged actions done in retaliation for his filing of grievances, filing of an inmate lawsuit, and sending of correspondence. Further, the actions alleged by Bell fall under the unlawful adverse effects the previous settlement protected him against.

To satisfy the third prong, Bell must show that "the official took the adverse action because the plaintiff engaged in the protected speech." *Id.* at 993 (quoiting *Revels*, 382 F.3d at 876). Here, Bell alleges sufficient facts to meet the third prong. He claims that the retaliatory behavior started after he filed a lawsuit and continued in response to prison grievances and communications with friends and family. Bell's retaliation claims against Young, Ponto, Dreiske, Swygert, Buol, Moos, Ekeren, Zoss, Neilson, Balsavage, Maranowski, Loneman,

11

Leidholt, Denning, Alsdorf, Westerkircher, Cook, and Terri survive initial review under 28 U.S.C. § 1915A.

### III. First Amendment Claims

#### A. Free Exercise and RLUIPA Claims

Bell alleges that his First Amendment right to free exercise of religion was violated by prison staff's denial of Buddhist materials and harassment. Doc. 1 at 13-14, 37. Bell also asserts this claim under the RLUIPA. In order to state a First Amendment claim, Bell must allege facts tending to show that prison officials have substantially burdened the free exercise of his religion. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening one's free exercise of religion means that the regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion."

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (alterations in original) (internal quotation omitted). "When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause . . . and RLUIPA." *Patel*, 515 F.3d at 813 (citing *Murphy*, 372 F.3d at 988).

Here, Bell provides sufficient details to allege that the denial of Buddhist materials substantially burdened his ability to exercise his religion. He also provides sufficient details to allege that the religion-based harassment he has endured has substantially burdened the free exercise of his religion. Thus, Bell's First Amendment free exercise and RLUIPA claims against Young, Ponto, Dreiske, Balsavage, Miller-Hunhoff, and Mertens-Jones survive initial review under 28 U.S.C. § 1915A.

## B. Denial of Access to Literature Claims

Bell claims that his First Amendment free speech rights were violated by prison policies that denied his access to literature. Doc. 1 at 13-14. "While prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). "[P]rison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution." *Id.* (citing *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989)).

To decide whether a prison policy advances "a legitimate penological interest," the Court must consider

> (1) whether there is a rational connection between the regulation and a neutral and legitimate governmental interest; (2) whether alternative means exist for the inmates to exercise their constitutional rights; (3) the impact of accommodating that right on other inmates and prison personnel; and (4) whether reasonable alternatives to the regulation exist.

*Id.* (first quoting *Thornburgh*, 490 U.S. at 413; then quoting *Safley*, 482 U.S. at 89-90).

In *Kaden*, an inmate at SDSP alleged that the prison mailroom's rejection of his magazine violated his rights under the First Amendment. *Id.* at 967-68. The complaint was dismissed upon screening pursuant to § 1915A. *Id.* at 968. The Eighth Circuit Court of Appeals stated, "[I]f a valid prison regulation is applied to particular mail items in such a way as to negate the legitimate penological interest, the regulation may be unconstitutional as applied to those items. Before censoring materials, prison authorities must review the content of each particular item received." *Id.* at 969 (citing *Murphy*, 372 F.3d at 986). The Eighth Circuit accepted Kaden's allegations as true on appeal and found them "sufficient to plausibly state a claim under § 1983." *Id.* at 969. The Eighth Circuit pointed out that at the "extremely early stage of the litigation"

13

before defendants "were required to answer the complaint," there was "a reasonable inference that SDSP's policy was unconstitutionally applied to the censored publication." *Id.* at 969.

Bell alleges that he was denied access to a Buddhist publication, a prison litigation self-help book, and a World War II military history magazine. Doc. 1 at 13, 39-40. He alleges that these materials were restricted or denied because of prison policies that were either in violation of his First Amendment rights or enforced in a manner that infringed on those rights. *See id.* As in *Kaden*, the facts as alleged by Bell show that the policy, as enforced, may not be serving a legitimate penological interest and may be unconstitutional. Thus, these claims against Young, Leidholt, and Miller-Hunhoff survive initial review under 28 U.S.C. § 1915A.

**C. Access to the Courts Claim**

Bell alleges that his First Amendment right to access the courts has been violated. *Id.* at 14-16, 19-21, 41-42. "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Lewis*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Lewis*, 518 U.S. at 356).

An actual injury cannot be established if the law library or legal assistance program is "subpar," and the inmate

> must go one step further and demonstrate that the alleged shortcomings in the
> library or legal assistance program hindered his efforts to pursue a legal claim. He

14

> might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis*, 518 U.S. at 351.

Bell alleges that prison staff restricted his access to the courts in three ways. First, he alleges that the prison tablets' frequent failures impeded his legal research. Doc. 1 at 14. Second, he claims that the tablets are monitored and that prison staff can observe his legal research. *Id.* Third, he claims that prison staff confiscated and destroyed his legal notes. *Id.* at 20-21. Bell alleges no facts showing that any legal claim he has brought or sought to bring has been hindered or stymied by a lack of access to the courts as required by *Lewis*. Bell argues that prison staff observed his legal research and used that information to harass him, but this behavior constitutes a retaliation claim. *See supra* Section II. Thus, Bell's access to the courts claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### D. Failure to Investigate Claim

Bell alleges that several prison officials violated his First Amendment rights by failing to properly investigate his claims. *Id.* at 18, 33-35. Some of these claims allege that prison staff failed to investigate violations of Bell's First Amendment rights, while others allege that prison staff failed to investigate retaliation. While it is true that prison officials must review materials before censoring them, there is no First Amendment right to appeal this review. Similarly, while Bell does have a claim as stated above for supervisory staff's failure to prevent retaliatory conduct, he does not have a standalone First Amendment claim for failure to investigate this conduct. Thus, Bell's failure to investigate claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV. Fourteenth Amendment Claims

### A. Equal Protection

Bell alleges that his Fourteenth Amendment right to equal protection has been violated by prison staff's refusal to allow Buddhist materials and their unequal enforcement of the return address policy. *Id.* at 23. The equal protection clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy*, 372 F.3d at 984 (quoting *Rouse v. Benton*, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, Bell must show: (1) he is treated differently than a similarly situated class of inmates, (2) the different treatment burdens a fundamental right, and (3) there is no rational relation between the different treatment and any legitimate penal interest. *Id.* (citing *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). In *Patel*, the Eighth Circuit explained that for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel*, 515 F.3d at 815 (citations omitted). Religion is a suspect classification. *See Burlington N. R.R. v. Ford*, 504 U.S. 648, 651 (1992) (describing "race or religion" as suspect classes).

Bell alleges that he is "the Jameson Buddhist Group facilitator" and that his religious materials are not delivered to him while Christian religious materials are delivered to other inmates. Doc. 1 at 13-14. Bell claims that this discrepancy is supported by deposition from his previous lawsuit. *Id.* at 14. At this time, Bell has stated sufficient facts to show that he was treated differently based upon a suspect class—religion. Bell's Fourteenth Amendment equal protection claim on religious grounds against Young, Ponto, and Miller-Hunhoff survives 28 U.S.C. § 1915A review.

Bell also alleges that the prison mail policy of refusing mail with adhesive address labels is unequally enforced. Although Bell does not allege that this different treatment is based upon a suspect classification, he does allege that it violates his First Amendment rights, which are fundamental rights. Bell has stated sufficient facts to show that he was deprived of his First Amendment rights. Thus, Bell's Fourteenth Amendment equal protection claim for unequal enforcement of the adhesive label mail policy against Miller-Hunhoff survives 28 U.S.C. § 1915A review.

## B. Due Process

Bell claims that the denial of his formal grievances and appeals violated his right to due process under the Fourteenth Amendment. *Id.* at 14. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that a refusal to process grievances alone did not state a constitutional deprivation.). In *Buckley*, the Eighth Circuit explained that a prison grievance procedure "is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Id.* (citations omitted); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) (citing *Buckley* for the proposition that "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983").

Here, Bell claims that the way his grievances are processed or remedied is a due process violation, but this alone does not rise to the level of a constitutional violation. Bell's due process claim regarding the administrative remedy process is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

17

## V. Eighth Amendment Claims

Bell alleges that much of the behavior described above constitutes cruel and unusual punishment in violation of the Eighth Amendment. Doc. 1 at 23. "The Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Revels*, 382 F.3d at 875; *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). To show deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate[] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997). Mere negligence does not constitute deliberate indifference. *Warren v. Missouri*, 995 F.2d 130, 131 (8th Cir. 1993).

Here, although Bell may be able to show sufficient intent on the part of some defendants to meet the subjective prong, the deprivations alleged are not sufficiently serious to deprive him

of life's necessities or constitute a risk of serious harm. Bell's allegations are best described by the above claims and do not violate the Eighth Amendment. Thus, Bell's Eighth Amendment claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

Accordingly, it is ORDERED

1. Bell's claims against all defendants in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2. Bell's retaliation claims against Young, Ponto, Dreiske, Swygert, Buol, Moos, Ekeren, Zoss, Neilson, Balsavage, Maranowski, Loneman, Leidholt, Denning, Alsdorf, Westerkircher, Cook, and Terri survive 28 U.S.C. § 1915A review.

3. Bell's First Amendment free exercise and RLUIPA claims against Young, Ponto, Dreiske, Balsavage, Leidholt, Miller-Hunhoff, and Mertens-Jones survive 28 U.S.C. § 1915A review.

4. Bell's First Amendment claims alleging denial of access to literature against Young, Leidholt, and Miller-Hunhoff survives 28 U.S.C. § 1915A review.

5. Bell's First Amendment access to the courts claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. Bell's First Amendment failure to investigate claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. Bell's Fourteenth Amendment equal protection claims against Young, Ponto, and Miller-Hunhoff survive 28 U.S.C. § 1915A review.

8. Bell's Fourteenth Amendment due process claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9. Bell's Eighth Amendment claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

10. The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Bell so that he may cause the complaint to be served upon defendants.

11. Bell shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

12. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Doc. 1) and this order, upon the defendants.

13. Defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the Defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

14. The clerk of the Court is directed to send a copy of this order to the appropriate official at Bell's institution.

15. Bell will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED August 25th, 2021.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK
*/s/ Matthew Thelen*

20