UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SHANE DOUGLAS BELL,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DARIN YOUNG, in his individual capacity; TROY PONTO, in his individual and official capacity; JENNIFER DREISKE, in her individual capacity; STEVEN SWYGERT, in his individual and official capacity; HAYLEY BUOL, in her individual and official capacity; JORDAN MOOS, in his individual and official capacity; DAREK EKEREN, in his individual and official capacity; JAYMIE ZOSS, in her individual and official capacity; LINDA MILLER-HUNHOFF, in her individual and official capacity; JULIE DENNING, in her individual and official capacity; TAMMY MERTENS-JONES, in her individual and official capacity; ALEXANDRIA ALSDORF, in her individual and official capacity; JESSICA COOK, in her individual and official capacity; JOSHUA WESTERKIRCHER, in his individual and official capacity; KELLIE WASKO, in her official capacity,<br><br>　　　　　Defendants. | 4:21-CV-04134-LLP<br><br>OPINION AND ORDER DENYING PLAINTIFF'S PRO SE MOTION TO ENFORCE SETTLEMENT AGREEMENT |

Plaintiff, Shane Douglas Bell, filed a pro se motion to enforce the parties' settlement agreement.[1] Doc. 85. Defendants responded, requesting that this Court deny Bell's motion to enforce. Doc. 86.

---

[1] Bell filed an identical motion to enforce the parties settlement agreement in *Bell v. Young*, 4:16-CV-04046-VLD, Doc. 187. The Court denied the motion to enforce because the motion will be addressed in the current case. *See Bell*, 4:16-CV-04046-VLD, Doc. 188.

1

## PROCEDURAL BACKGROUND

Bell, at times relevant an inmate at the South Dakota State Penitentiary (SDSP),[2] filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court screened Bell's complaint under 28 U.S.C. §§ 1915 and 1915A dismissing it in part and directing service on the remaining defendants. Doc. 8. On February 24, 2022, Defendants moved for summary judgment on Bell's remaining claims. Doc. 35. This Court denied summary judgment on Bell's First Amendment retaliation claim, First Amendment free exercise official capacity claim for injunctive relief, Religious Land Use and Institutionalized Persons Act official capacity claim for injunctive relief, First Amendment access to literature official capacity claim for injunctive relief, and Fourteenth Amendment equal protection official capacity claim. Doc. 72 at 43–44.

On October 16, 2023, the parties filed a Joint Stipulation for Entry of Order of Dismissal seeking dismissal of the action with prejudice in accordance with the Settlement Agreement and Release (settlement agreement) dated July 12, 2023. Doc. 83 at 1. The parties stipulated that the settlement agreement shall be incorporated in the Final Order or Judgment of Dismissal and stipulated that the Court shall retain jurisdiction to enforce the terms of the settlement agreement. *Id.* at 1–2. Based on the parties' agreement, this Court entered an order dismissing the action with prejudice, incorporating the terms of the settlement agreement, and retaining jurisdiction to enforce the terms of the settlement agreement. Doc. 84 at 1–2.

---

[2] At the time Bell filed his complaint through the time the parties reached a settlement agreement, Bell was incarcerated at the SDSP. *See* Docs. 1, 84. When the alleged violations of the settlement agreement occurred, Bell was housed at the SDSP. Doc. 85 at 5. Bell has since been transferred to the Mike Durfee State Prison in Springfield, South Dakota. Doc. 93; *Offender Locator*, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited Sept. 9, 2024).

## FACTUAL BACKGROUND[3]

Bell claims that Defendants violated the settlement agreement because he was housed with "a known mentally ill inmate[.]" Doc. 85 at 1. Bell alleges that he was then placed in the Segregated Housing Unit (SHU) for one week, but he never received a write-up. *Id.* He alleges that he suffered from asthma attacks in the SHU, but prison staff and nurses denied him use of his inhaler for eighteen hours and ignored his use of the call button. *Id.* at 1–2. Bell claims that while he was in the SHU, his electronic typewriter—that cost almost $500—was broken, and prison staff refused to replace or reimburse him for the broken device. *Id.* at 2.

Bell also alleges that Defendants will not allow him to contact Inspector General Gene Redman by privileged mail; he alleges that the letter and postcard sent to Redman resulted in more verbal slander and adverse effects from prison staff who read his mail written to Redman. *Id.* Bell alleges that the settlement agreement permitted him to contact Redman if the agreement was not followed, but contacting Redman has allegedly resulted in more intimidation, verbal slander, and other unlawful adverse effects as a result of prison staff weaponizing Bell's First Amendment rights. *Id.* Bell requests that his mail to Redman be sent as privileged mail to prevent intimidation, slander, retaliation, and other unlawful adverse effects by prison staff. *Id.* at 3.

Bell also claims that he worked in the Prison Industries (PI) Shop for two-and-a-half years, but he no longer works there because of the hostile work environment caused by his protected activity and Defendants' actions. *Id.* Bell alleges that Defendants made changes to the PI Shop and caused inmates serving life sentences to be reclassified, to lose their jobs, and to be

---

[3] This Court recites the facts as alleged in Bell's motion to enforce settlement agreement, Doc. 85.

sent to other facilities. *Id.* On Bell's last day of working at the PI Shop, his "boss Dustin threatened to lay [Bell] in from work or fire [him] if [Bell] didn't clean welded parts faster." *Id.* at 4. After Bell showed his settlement agreement to Terry, the owner of PI Industries, Bell's work hours were reduced. *Id.*

Bell also alleges that the settlement agreement has been violated with respect to the Jameson Buddhist Group. *Id.* For the last eight years, Bell has facilitated the Jameson Buddhist Group, but services have been late, disrupted, and canceled, with another group being placed in the scheduled room. *Id.* Bell no longer receives a "ring out list" of people attending services. *Id.* A Jameson Buddhist Group religious meal was scheduled for December 9, 2023, from 5:00 p.m. to 8:00 p.m., but it was later rescheduled to 4:00 p.m. to 6:00 p.m., which is an hour shorter. *Id.*

Defendants filed a brief in response to Bell's motion disputing the claims in Bell's motion to enforce. Doc. 86. The brief included eleven attachments and three affidavits. *Id.*; Doc. 87; Doc. 88; Doc. 89. Bell replied to Defendants' response, disputing allegations in the response. Doc. 90. Bell also filed two affidavits with his reply. Doc. 91; Doc. 92.

## DISCUSSION

### I. Jurisdiction

Defendants argue that this Court lacks jurisdiction to enforce the settlement agreement because an action to enforce a settlement agreement should be heard in state court unless a federal court has "its own basis for jurisdiction." Doc. 86 at 2–3 (quoting *Bell v. Young*, 4:16-CV-04046-VLD, 2020 WL 7127133, at *3 (D.S.D. Dec. 4, 2020)).

The parties stipulated to dismissal of the action under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) "on the merits, with prejudice, in accordance with the terms of the Settlement Agreement and Release dated July 12, 2023, the terms of which shall be incorporated by

reference in the Final Order or Judgment of Dismissal, per the agreement of the parties." Doc. 83 at 1–2. The parties "further stipulated and agreed that the Court shall retain jurisdiction to enforce the terms of the Settlement Agreement and Release." *Id.* at 2. In its Judgment of Dismissal, this Court incorporated the terms of the settlement agreement and ordered that "the Court shall retain jurisdiction to enforce the terms of the Settlement Agreement and Release." Doc. 84 at 1–2.

Federal Rule of Civil Procedure Rule 41(a)(1)(A)(ii) permits parties to "dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." The Supreme Court has held that

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994). Because the parties agreed that the Court shall retain jurisdiction to enforce the terms of the settlement agreement and because this Court retained jurisdiction in its Judgment of Dismissal, this Court has jurisdiction. *See* Docs. 83, 84. When a court retained jurisdiction, parties may file a motion to enforce the settlement agreement in the original case or may file a separate breach of contract action before the court. *See Myers v. Richland Cnty.*, 429 F.3d 740, 747 (8th Cir. 2005) (citing *Kokkonen*, 511 U.S. at 378).

## II. Legal Background

Settlement agreements are governed by contract law. *Lewis v. Benjamin Moore & Co.*, 574 N.W.2d 887, 889 (S.D. 1998). The parties agreed that the settlement agreement was

governed by and in accordance with South Dakota law. Doc. 78-1 at 5. Contract interpretation is a question of law for the court to determine. *Lillibridge v. Meade School Dist. #46-1*, 746 N.W.2d 428, 431 (S.D. 2008). When interpreting a contract, "effect will be given to the plain meaning of its words." *In re Midnight Star Enters., L.P.*, 724 N.W.2d 334, 337 (S.D. 2006).

If a contract's language is clear and unambiguous, "it is the duty of [the] Court to declare and enforce it." *Pauley v. Simonson*, 720 N.W.2d 665, 668 (S.D. 2006) (quoting *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 709 N.W.2d 350, 354 (S.D. 2006)). If the contract is ambiguous, then "parol and extrinsic evidence may be utilized 'to show what [the parties] meant by what they said . . . .' " *Id.* (quoting *Jensen v. Pure Plant Food Int't., Ltd.*, 274 N.W.2d 261, 264 (S.D. 1979)). A contract "is ambiguous when it is fairly susceptible to two constructions." *Fall River Cnty. v. S.D. Pub. Assur. All.*, 623 N.W.2d 735, 737 (S.D. 2001) (internal quotation omitted). An ambiguous contract is construed against the party who drafted the contract. *Pete Lien & Sons, Inc. v. First Am. Title Ins., Co.*, 478 N.W.2d 824, 827 (S.D. 1991).

### III.     Legal Mail

Bell alleges that Defendants have not allowed him to contact the inspector general by privileged/legal correspondence, which he claims violates the settlement agreement. Doc. 85 at 2–3. The parties' settlement agreement permits complaints to be sent to the inspector general, but the agreement does not state that mail sent to the inspector general will be considered privileged/legal communication. *See* Doc. 78-1 at 2. Bell claims that he believed that the settlement agreement would consider mail sent to the inspector general to be privileged/legal correspondence, but the settlement agreement is unambiguous as to permitting Bell to mail complaints to the inspector general, and there is no indication in the settlement agreement that

6

the parties agreed that mail to the inspector general would be considered privileged/legal correspondence. *See id.*; Doc. 90 at 9; Doc. 92 ¶ 5.

Further, mail to the inspector general does not meet the definition of "Privileged/Legal Correspondence" under the South Dakota Department of Corrections (DOC) policy. *See* Doc. 86 at 5; Doc. 86-1 at 2. Under DOC Policy 1.5.D.3, "Privileged/Legal Correspondence" is defined as "[c]orrespondence mailed directly to or from a court, judge, attorney or specific governmental office or agencies identified in this policy." Doc. 86-1 at 2. Outgoing First-Class mail that on the face of the envelope identifies the recipient as a licensed attorney or approved designee of the attorney, a judge, an officer of the court, or an organization known to provide legal services is considered privileged/legal correspondence under DOC policy. *Id.* at 6. The policy further specifies that mail to "[p]rison or corrections agencies or officials (other than the South Dakota Secretary of Corrections)" is not considered as privileged/legal correspondence. *Id.* Bell has shown that Defendants complied with a prison policy, not that Defendants violated the plain meaning of the settlement agreement. *See generally* Doc. 85. *See also* Doc. 78-1 at 3.

Thus, Bell has not shown a violation of the settlement agreement by Defendants' refusal to consider his mail to the inspector general as privileged/legal communication. As to Bell's claims that he was retaliated against because of the content in his messages sent to the inspector general or due to the fact that he wrote to the inspector general, those claims will be considered with Bell's other retaliation claims.

### IV.   Retaliation

Bell alleges that he has been retaliated against in violation of the settlement agreement because (1) he was housed with a "known mentally ill inmate[,]" (2) he was placed in the SHU without a write-up, (3) he was denied use of his inhaler, (4) prison staff broke his typewriter,

(5) he was terminated from the PI Shop, (6) his working hours were reduced, and (7) prison staff have interfered with Buddhist services. *See generally* Doc. 85. Defendants' response disputed Bell's allegations and denied violation of the settlement agreement. *See generally* Docs. 86, 86-1–11, 87, 88, 89. Bell's reply included affidavits to support his claims. Docs. 90, 91, 93.

Bell also filed a separate pro se civil rights action under 42 U.S.C. § 1983 that includes alleged violations of the settlement agreement. *Bell v. Tjeerdsma*, 4:24-CV-04068-LLP, Doc. 1. In his separate action, he alleges many of the facts that he claims violate the settlement agreement, including (1) housing a "known mentally ill inmate into [Bell's] cell[,]" (2) placing him in the SHU, (3) refusing to provide asthma inhaler for eighteen hours while he was in the SHU, (4) breaching the settlement agreement, (5) refusing to reimburse for broken typewriter, and (6) interfering with Jameson Buddhist Group. *See generally id.*

The Eighth Circuit Court of Appeals has recognized that one of the "prudential limits upon the exercise of the [federal court] jurisdiction bestowed by Congress" is "the principle that federal courts may decline to exercise their jurisdiction in order to prevent duplicative litigation." *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 952 (8th Cir. 2001); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation."). "Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Prudential Health Care Plan, Inc.*, 259 F.3d at 954, 956 (citing *Colo. River Water Conservation Dist.*, 424 U.S. at 817). The Eighth Circuit has applied this principal even though the precise issue before the court differed from the claims raised in the separate suit. *Id.* at 951–54 (applying principal

even though the precise issue before it, whether the district court properly denied the State of Missouri's motion to remand to state court, differed from the substantive breach of contract and fraud claims raised in the State of Missouri's second complaint).

When the court has jurisdiction, the Eighth Circuit has held that parties can seek to enforce a settlement agreement in the original action via motion or by filing a separate breach of contract action. *Myers*, 429 F.3d at 747 (citing *Kokkonen*, 511 U.S. at 378). "[A] motion to enforce a settlement agreement is essentially a claim for a breach of contract[,]" which " 'requires its own basis for jurisdiction.' " *Toll Bros., Inc. v. Twp. Of Moorestown*, 2011 WL 2559507, at *12 (D.N.J. June 27, 2011) (quoting *Kokkonen*, 511 U.S. at 378). Bell has filed both a motion to enforce the settlement agreement, Doc. 85, and a civil rights complaint also alleging a state-law breach of contract claim for violation of the settlement agreement, *Bell*, 4:24-CV-04068-LLP. In Bell's motion to enforce the settlement agreement, he requests the Court's "assistance in making sure defendants and their subordinates follow contracts and the spirit of the contracts, no retaliation/unlawful adverse effects." Doc. 85 at 4. In Bell's new lawsuit, he requests that this Court enforce the "no retaliation/unlawful adverse effects clause from both previous settlement agreements[.]" *Bell*, 4:24-CV-04068-LLP, Doc. 1 at 22. Bell has pursued two avenues requesting that this Court take the same action: enforce his settlement agreement.[4]

---

[4] In Bell's motion to enforce, Bell alleges conduct by Schneider, Tammy Mertens-Jones, Dustin, Terry, and unidentified prison staff and nurses, but only Mertens-Jones was a party to the settlement agreement. Doc. 85. In Bell's new lawsuit, Schneider, Mertens-Jones, Nurse Jane Doe #1, Jane Doe Nurse #2, John Doe Officer 1, John Doe Officer #2, and other prison staff are named as defendants in their individual and official capacities. *Bell*, 4:24-CV-04068-LLP, Doc. 1. Dustin and Terry are not named as defendants to the new lawsuit. *See id.* Dustin and Terry were not named as parties to the settlement agreement and have not been identified as employees of the DOC or as "successors, heirs, descendants and legal representatives" for the settlement agreement to be binding on them. Doc. 78-1 at 2–5. Thus, if Bell seeks to allege claims against

9

Because there are disputes of fact, this Court finds that it would be more judicially efficient to resolve the dispute in Bell's new suit, 4:24-CV-04068-LLP, which would prevent duplicative litigation, permit the parties to conduct additional discovery, provide a complete record, and allow the Court to consider Bell's breach of contract claim concurrently with his civil rights claims arising from the same alleged actions. Thus, Bell's motion to enforce the settlement agreement, Doc. 85, is denied without prejudice as duplicative litigation. To the extent that any of Bell's allegations of breach of the settlement agreement are not stated in his complaint, Bell may file an amended complaint in 4:24-CV-04068-LLP within **thirty (30) days from the date of this order** alleging any breach of settlement agreement claim not already stated in his complaint. Bell is warned that "an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (citing *Washer v. Bullitt Cnty.*, 110 U.S. 558, 562 (1884)). Thus, if Bell files an amended complaint in 4:24-CV-04068-LLP, all claims he seeks to bring in the lawsuit must be included in his amended complaint.

## CONCLUSION

Accordingly, it is ORDERED

1. That Bell's motion to enforce settlement, Doc. 85, is denied without prejudice.

---

Dustin and Terry for breach of the settlement agreement, he should amend his complaint in *Bell*, 4:24-CV-04068-LLP, to name them as defendants and identify how they are bound by the settlement agreement.

2. That Bell may move to amend his complaint in his pending civil case, *Bell v. Tjeerdsma*, 4:24-CV-04068-LLP, within **thirty (30) days from the date of this order** to allege any breach of settlement agreement claim not already stated in his complaint.

DATED September 12, 2024.

ATTEST:
MATTHEW W. THELEN, CLERK

BY THE COURT:

Lawrence L. Piersol
United States District Judge